UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------x

GASSER CHAIR COMPANY, INC. and
GEORGE GASSER,

                              Plaintiffs,

        -against-

INFANTI CHAIR MANUFACTURING
CORP. and VITTORIO INFANTI,

                              Defendants.

-----------------------------------------------x

GEORGE GASSER and GASSER CHAIR
COMPANY, INC.,                                    MEMORANDUM AND ORDER

                              Plaintiffs,         88 CV 3931 (ILG)
                                                  03 CV 6413 (ILG)

INFANTI INTERNATIONAL, INC., MARK
INFANTI, NANCY APONTE INFANTI,
VITTORIA INFANTI, MARGUERITA
INFANTI, MARIELLA INFANTI, AMBOY
NATIONAL BANK, GEORGE E. SCHARPF
and SANDERS W. GROPPER, in his
capacity as Receiver of Infanti
International, Inc.,

                              Defendants.

-----------------------------------------------x

GLASSER, United States District Judge:

## INTRODUCTION

Plaintiffs Gasser Chair Company, Inc. and George Gasser ("plaintiffs") obtained a

judgment in excess of $15 million (the "Judgment") against Infanti Chair Manufacturing

Corporation ("Infanti Chair") and Vittorio Infanti ("Mr. Infanti") on August 9, 1996.

Despite their persistent efforts, plaintiffs have been unable to satisfy the Judgment. In a

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,

        -against-                              MEMORANDUM AND ORDER
                                               02 CR 1239 (ILG)
WARREN NUZZO,

                    Defendant.
-----------------------------------------------x
GLASSER, United States District Judge:

        In 385 F.3d 109 (2d Cir. 2004), the Court of Appeals has reversed in part and

vacated and remanded in part, a sentence imposed upon this defendant in October

2003, of imprisonment for a term of 136 months to be followed by a term of supervised

release and a special assessment of $200. In arriving at the sentence, the Court

calculated a total offense level of 32 by enhancing the base offense level by 2 points for

abuse of trust and an additional 2 points for obstructing justice and crediting him with 2

points for acceptance of responsibility, 2 points for safety valve entitlement and 2 points

for mitigating circumstances in accordance with U.S.S.G. § 5K2.0.

        The defendant appealed the enhancement of the sentence for abuse of trust and

the government cross-appealed contending that I erred in awarding Nuzzo a safety valve

deduction, U.S.S.G. § § 2D1.1(b)(6) and 5C1.2(a) and in downwardly departing pursuant

to U.S.S.G. § 5K2.0. Although not referenced in the Court's opinion, it is assumed that

the defendant's appeal is pursuant to 18 U.S.C. § 3742(b)(1) and/or (2).

        In deciding the appeal by the defendant, the determination that the abuse of

process was erroneous must have been pursuant to § 3742(f)(1). The sentence was

imposed as a result of an incorrect application of the guidelines, in which case "the court

shall remand the case for further sentencing proceedings."

In deciding the cross-appeal by the government that the sentence was "outside the applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment, or the departure was based upon an impermissible factor . . . and is plainly unreasonable, it shall state specific reasons for its conclusions and – if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instruction as the court considers appropriate, subject to subsection (g)." (emphasis added) § 3742(f)(2)(B) subsection (g) provides that if the case was remanded pursuant to subsection (f)(1) or (f)(2) the district court shall sentence in accordance with § 3553.

The Court of Appeals reversed the enhancement for abuse of a position of trust and vacated the award of a safety valve deduction and downward departure and remanded the case to the this Court to "(1) reevaluate whether Nuzzo is entitled to a safety-valve deduction; (2) reconsider, on notice to the government as appropriate, whether Nuzzo is entitled to a downward departure; and if it finds that such a departure is warranted, (3) state in open court, and in a written order and judgment, its reasoning in a manner that complies with the requirements of the Protect Act."

The significant distinction between remanding a case for further sentencing proceedings and setting aside or vacating and remanding for further sentencing proceedings has been frequently noted. In Werber v. United States, 149 F.3d 172, 178 (2d Cir. 1998), the Court had occasion to observe, citing United States v. Polland, 56 F.3d 776, 778 (7th Cir. 1995), that "The effect of a vacation is to nullify the previously

2

imposed sentence. Therefore the district court will be writing on a clean slate." The Court also cited United States v. Maldonado, 996 F.2d 598 (2d Cir. 1993), to the same effect.

The Court in Werber also observed that in undertaking to resentence a defendant the Court is required to consider him as he stands before the Court at that time, citing United States v. Core, 125 F.3d 74, 77 (2d Cir. 1997). U.S.S.G. § 1B1.11 similarly provided that "the court shall use the Guidelines Manual in effect on the date the defendant is sentenced."

Between the time Nuzzo was sentenced on October 9, 2003, the Court of Appeals decided his appeal on October 1, 2004, and the time his appearance before the Court for resentencing, the Supreme Court decided Booker/FanFan, 543 U.S. 220, 125 S. Ct. 738 on January 12, 2005, declaring the mandatory application of the Sentencing Guidelines unconstitutional and making them effectively advisory. Less than one month after that case was decided, the Court of Appeals for the Second Circuit decided United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In what the court characterized as the "Remedy Opinion," the opinion by Justice Breyer, 543 U.S.     , 125 s. Ct. at 756, it noted that in that opinion §3553(b)(1), mandating the use of the Guidelines and § 3742(e) which set forth standards of review on appeal were required to be severed and were replaced with "a practical standard of review already familiar to appellate courts: review for 'unreasonableness'" observing that "the 'unreasonableness' standards are not foreign to sentencing law." 397 F.3d at 110. The Court in Booker/FanFan explained that § 3553(a) remained in effect and the factors listed in that section would guide appellate courts in determining whether a sentence is reasonable.  The Court in Crosby cautioned that the

"excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded. On the contrary, sentencing judges remain under a duty with respect to the Guidelines – not the previously imposed duty to apply the Guidelines, but the continuing duty to 'consider' them, along with the other factors listed in section 3553(a). In order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range. A judge cannot satisfy this duty by a general reference to the entirety of the Guidelines Manual followed by a decision to impose a 'non-Guidelines sentence'. Subsection 3553(a)(4) contemplates consideration of the Guidelines range applicable to the defendant and subsection 3553(a)(5) contemplates consideration of policy statements . . . Once an applicable Guidelines range has been determined, the sentencing judge will have the duty, imposed by subsection 3553(a)(4) to 'consider' it, along with all of the factors listed in section 3553(a)." 397 F.3d at 111-112.

The Court emphasized that the sentencing judge would commit error in violation of § 3553(a) if he failed to "consider" the applicable Guidelines range and the other 3553(a) factors and simply imposed what he deemed an appropriate sentence without the required consideration. The sentencing judge would also err if consideration were not given to the applicable Guidelines range which § 3553(a)(4) required.

Some six months later, the Court decided United States v. Lake, 419 F.3d 111 (2d Cir. 2005), in which it wrote at p. 114 as follows:

> First, the fact that a judge selects a sentence *within* a guideline range that the judge thought he was required to apply does not necessarily mean that the same sentence would have been imposed had the judge understood the Guidelines as a whole to be advisory. The applicable

> guideline range provides the frame of reference against
> which the judge chooses an appropriate sentence. . . . Second,
> although even before *Booker*, a sentencing judge was obliged
> to consider all the factors set forth in 18 U.S.C. § 3553(a), the
> required use of one of those factors – the Guidelines, *see id.*
> § 3553(a)(4) -- rendered of "uncertain import" the
> significance of the other factors. *See* ***Crosby***, 397 F.3d at
> 111. Now, without the mandatory duty to apply the
> Guidelines, consideration of the other section 3553(a) factors
> "acquires renewed significance," ***Crosby***, 397 F.3d at 111,
> and might result in a different sentence. Third, absent the
> strictures of the Guidelines, counsel would have had the
> opportunity to urge consideration of circumstances that were
> prohibited as grounds for a departure. *See* U.S.S.G. §
> 5K2.0(d).

As has been discussed, the defendant stands before the Court, with a clean slate and to be re-sentenced in accordance with the law currently in effect. The mandatory duty to apply the Guidelines being abrogated and the "required uses" of § 3553(a)(4) rendering the significance of the other factors of "uncertain import" the § 3553(a) factors have thus acquired new significance and might result in a different sentence. A consideration of those factors is thus in order and they are:

> (1) The nature and circumstances of the offense and the history and
> characteristics of the defendant

The defendant was reared primarily by his grandmother because his mother was a severe alcoholic who participated in more than 50 rehab programs and was hospitalized several times during the defendant's formative years because of her chromic alcoholism. PSR par. 35.

In 1996, his mother was the victim of a fire in her home from which she suffered 3rd degree burns over 50% of her body. She was hospitalized for six months and while there, suffered a massive stroke which left her completely bedridden. She subsequently

died while Nuzzo was incarcerated. PSR par. 41.

The "characteristics" of the defendant are never conveyed by the cold print of a sentencing transcript. The persona of a defendant standing before a sentencing judge is very rarely, if ever, articulated in imposing sentence, but surely plays a role in the delicate and serious process of determining the appropriate sentence and when capable of articulation is an accepted factor to be considered in that determination. See, e.g., United States v. Lara, 905 F.2d 599 (2d Cir. 1990).

Although the defendant does not have the characteristics of the defendant in Lara, he is short, pudgy, indifferent in appearance and perhaps best described as a vulnerable Casper Milquetoast. A reading of the events which led to his conviction would support the conclusion that he was seduced by wily, cunning women in whose hands he was as clay in the hands of a potter. He had no known prior criminal conviction.

His late teenage years and his twenties were marred by chronic alcohol dependence which caused adverse employment and recurring personal problems. He sought and obtained professional counseling and underwent a psychiatric evaluation at Four Winds Hospital in Katonah, New York where he was hospitalized for one week and thereafter spent three weeks at Arms Acres, a substance abuse treatment center in Carmel, New York.

His substance abuse and the fractured life to which it led is not surprising given the formative years against the backdrop of an absent, chronic alcoholic mother.

The nature of the offense and the circumstances surrounding its commission are adequately described in the presentence report and a realistic appraisal of those

6

circumstances has been stated above.

    (2) the need for the sentence imposed –

                (A) to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just punishment
        are considerations which weigh heavily with the court in
        imposing every sentence, and the sentence to be imposed
        now reflects a very considered assessment of those factors.

                (B) to afford adequate deterrence to criminal conduct.

    This is surely not the occasion to decry yet again the bloodless, mechanistic

sentencing mandated by the Guidelines and to ask by what touchstone was it

determined that a sentence of 150 months reflected the seriousness of an offense more

effectively than one for 130 months or even 90 months, and was more precisely

calibrated to promote respect for the law and provided the punishment that was just.

Suffice it to say I have considered those factors, limited as that consideration is by the

mandatory minimum of 120 months.

                (C) to protect the public from further crimes of the
        defendant;

    Precisely what measures a court should take to protect the public from crimes the

defendant might commit in the future, short of imprisoning him for life, is not entirely

clear to this court.

                (D) to provide the defendant with needed educational
        or vocational training, medical care, or other correctional
        treatment in the most effective manner.

    In imposing the sentence initially, I directed the Bureau of Prisons to provide the

necessary treatment aimed at his substance abuse.

7

In Crosby, the Court acknowledged that "Even if reasonable as to length, a sentence unreasonable for legal error in the method of its selection is cause for concern because, in many cases, it will be impossible to tell whether the judge would have imposed the same sentence had the judge not felt compelled to impose a Guidelines sentence." 397 F.3d at 115. In that regard, I can state with absolute certainty that I would not have imposed the same sentence were I not bound by the Guidelines.[1]

In sum, the sentence that I now impose, the mandatory minimum of 120 months, I believe to be reasonable and in that regard I am comforted by the following portion of the opinion in Crosby:

> Because "reasonableness" is inherently a concept of flexible meaning, generally lacking precise boundaries, we decline to fashion any *per se* rules as to the reasonableness of every sentence within an applicable guideline or the unreasonableness of every sentence outside an applicable guideline. Indeed, such *per se* rules would risk being invalidated as contrary to the Supreme Court's holding in *Booker/Fanfan*, because they would effectively re-institute mandatory adherence to the Guidelines. *See*

---

[1] In granting a safety valve reduction notwithstanding my comments concerning the defendant's veracity, perhaps specific reference to United States v. Schreiber, 191 F.3d 103 (2d Cir. 1999) and to United States v. Jeffers, 329 F.3d 94 (2d Cir. 2003) (with emphasis upon the persuasive view of Judge Raggi in her concurring opinion in Jeffers), would have been appropriate. In any event, Schreiber and Jeffers notwithstanding, the fifth prerequisite of the safety valve provision, U.S.S.G. § 5C1.2(5) was not satisfied. The burden of establishing entitlement to it rests with the defendant and he has not carried it. He has remained mute and not forthcoming even while hearing the government's recitation of the information they have reason to believe he has and has not disclosed. Having granted the safety valve deduction was, for that reason, inappropriate. And explication of the fragile state of his grandmother's health and her almost complete dependence upon him as reflected in par. 43 of the presentence report would have enlightened the 5K2.0 invocation when imposing sentence initially. In a letter to me dated June 27, 2003, his grandmother wrote: "I'm Warren Nuzzo's Grandmother. I always had him to help me – He took me to my doctor, took care of my medication, went food shopping, did laundry with me – I really need him!! Please help me!!

8

> *Booker/Fanfan,* 543 U.S. at —--, 125 S.Ct. at 794 (Scalia, J.,
> dissenting in part).

In all other respects, the term of supervised release and the special assessment

are reimposed and substance abuse treatment is to be provided the defendant by the

Bureau of Prisons.

SO ORDERED.

Dated:      Brooklyn, New York
             February 13, 2006

I. Leo Glasser

related proceeding in which plaintiffs seek to impose liability upon Infanti International, Inc. ("Infanti International" or the "Corporation") as a successor to Infanti Chair, and to hold Infanti International liable on the Judgment, the Court issued a decision, familiarity with which is assumed, granting partial summary judgment to plaintiffs. See Gasser v. Infanti International, Inc., 353 F. Supp. 2d 342 (E.D.N.Y. 2005). In that decision, the Court held that a patent (the "Patent") once owned by Mr. Infanti, which he subsequently conveyed to his daughter, Vittoria Infanti ("Vicky"), is owned by plaintiffs because Mr. Infanti's assignment of the Patent to his daughter, without consideration, constituted a fraudulent conveyance under New York law.[1]

Plaintiffs have filed this supplementary proceeding by order to show cause for, inter alia, the appointment of a receiver to sell the Patent. George E. Scharpf ("Scharpf"), the President of Amboy National Bank ("Amboy"), and a creditor of Infanti International, acting in his individual capacity, opposes plaintiffs' application and asserts that he has a valid security interest in the Patent superior to any claim to it asserted by plaintiffs. In response, plaintiffs argue, among other things, that Scharpf does not have a valid security interest in the Patent.

For the reasons that follow, the Court grants plaintiffs' motion and finds that there is no evidence that Scharpf has a valid security interest in the Patent superior to the plaintiffs' claim to it. Pursuant to N.Y. C.P.L.R. § 5228(a), the Court therefore will appoint a receiver to conduct a sale of the Patent.

---

[1] In that related proceeding, the Court held that plaintiffs are rightful owners of patent number 6,135,562 for a chair with "releasably detachable and interchangeable cushions," which Mr. Infanti invented in September 1999 and which he has called the "Versi-Chair." Id.

2

## BACKGROUND

The transactions entered into between Scharpf, on the one hand, and Infanti International and Mr. Infanti, on the other hand, determine the Court's resolution of plaintiffs' application. They are as follows. On or about September 10, 2001, and subsequently, on or about October 4, 2001, Scharpf and Infanti International entered into two identical collateral promissory notes in the amount of $500,000 and $135,000, respectively. In order to secure the extension of credit under these notes, Infanti International granted Scharpf a security interest in certain collateral, including the "[a]ssignment of all patents related to Infanti Versi Chairs." On or about July 22, 2002, and subsequently, on or about October 17, 2002, Scharpf and Infanti International entered into two identical collateral promissory notes, each in the amount of $100,000. In order to secure the extension of credit under these notes, Infanti International granted Scharpf a security interest in certain collateral, including "a chair with a releasably detachable and interchangeable seat cushion, and releasably detachable and interchangeable front and rear seat back cushions mounted to injection molded plates." All four of these notes (collectively, the "Notes") were "guaranteed" by Mr. Infanti.[2] They all contained a New Jersey choice of law provision.[3]

---

[2]The Court notes that at the time that Mr. Infanti "guaranteed" the Notes, he was a judgment debtor to plaintiffs in an amount exceeding $15 million.

[3]The Court enforces the New Jersey choice of law provision. "It is the general policy of New York courts to enforce choice of law provisions." See RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003); see also Hugh O'Kane Elec. Co. v. Mastec N.A., Inc., 2005 WL 526805, at * (1st Dep't Mar. 8, 2005) ("It is the policy of the courts of New York to enforce choice-of-law clauses, provided that the law chosen has a reasonable relationship to the agreement and does not violate a fundamental public policy of New York") (citation omitted); cf. Air Economy Corp. v. Aero-Flow Dynamics, 122 N.J. Super. 456, 457, 300 A.2d 856 (N.J. Super. App. Div. 1973) (while an agreement to be bound by the laws of a designated state cannot divest a state of "judicial jurisdiction," it will be enforced unless it is unfair, unreasonable or against the public policy of the forum state). Scharpf, Infanti International and Mr. Infanti are sophisticated in business and there is no evidence that applying New Jersey law to the Notes is unfair,

Scharpf claims that he perfected his security agreement in the Patent by filing a UCC-1 financing statement (the "UCC Financing Statement") in the Richmond County Clerk's office on March 19, 2002 and by recording a security agreement in the United States Patent and Trademark Office (the "PTO Security Agreement") on October 8, 2002. The UCC Financing Statement lists Infanti International and Mr. Infanti as the debtors, and Scharpf as the secured party. The PTO Security Agreement identifies Mr. Infanti and his daughter "Vittoria Infanti Valentine [sic]" as the conveying parties, and Scharpf, as the receiving party. Only the PTO Security Agreement was signed.[4]

## DISCUSSION

### A.    Whether Scharpf Has A Valid Security Interest in the Patent

Based on the UCC Financing Statement and PTO Security Agreement, Scharpf asserts that "as the holder of a perfected security interest in the Patent, obtained for fair value," he "has priority over Gasser." (See January 14, 2005 Letter from Scharpf to Court). Scharpf relies on N.Y. C.P.L.R. § 5202(a), which provides that "[w]hen a judgment creditor has delivered an execution to a sheriff," as plaintiffs have done here, "the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, <u>except a transferee who acquired the debt or property for fair consideration</u> before it was levied upon." (emphasis added). Scharpf

---

unreasonable or against public policy. Indeed, the Uniform Commercial Code which is relevant to the issues presented by the parties is the same or substantially similar in New Jersey and New York.

[4]It was signed by a lawyer named L. Stephen Pastor.

4

argues that plaintiffs have never levied on the Patent because the Supreme Court has held that a judgment creditor cannot enforce a judgment against a patent by execution and levy. (Id., citing Stephens v. Cady, 55 U.S. 528 (1852), Stevens v. Gladding, 58 U.S. 447 (1954)). Further, according to Scharpf, even if plaintiffs could and did levy on the Patent, he "acquired his interest in [it] for fair consideration (i.e., the value of all of his loans), before the Patent was levied upon."[5] (Id.)

As a threshold matter, the Court must determine whether Scharpf's contention is correct, namely, that he is a holder of a perfected security interest in the Patent. "Perfection of security interests is determined by state law." In re Investors & Lenders, Ltd., 165 B.R. 389, 393 (Bankr. D. N.J. 1994). Under New Jersey law (and the law of New York), a security interest is enforceable against the debtor "with respect to the collateral only if ... the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party." N.J. Stat. Ann. 12A § 9-203(b). "'Rights in the collateral' merely states a truism, namely, that the debtor can normally only convey what it has." 4 James J. White and Robert S. Summers, Uniform Commercial Code, at 127 (Ch. 31-3) (5th ed. 2002).

The Notes pursuant to which Scharpf obtained a security interest in the Patent were signed between September 10, 2001 and October 17, 2002. However, at that time,

---

[5]There is no dispute that the UCC Financing Statement was sufficient, i.e., that it contained the requisite information to be enforceable. N.J. Stat. Ann. 12A § 9-502(a) provides that a financing statement is "sufficient" only if it: "(1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement." The UCC Financing Statement satisfies each element. Previously, in order to perfect a security interest pursuant to the UCC, a creditor was required to file a financing statement signed by the debtor. Therefore, cases such as In re Maple Contractors, Inc., 172 N.J. Super. 348, 350, 411 A.2d 1186, 1187 (Super. Ct. Law Div. 1979), which held that a financing statement was "deficient for lack of the debtor's signature" are no longer good law for this point.

5

neither Infanti International, nor Mr. Infanti, had any interest in the Patent to convey to Scharpf. The undisputed facts reveal that Infanti International never had an interest in the Patent at any time.[6] Mr. Infanti did not have an interest in the Patent because he "testified that he transferred the Patent to his daughter Victoria 'as a gift' at or around the time (September 10, 1999) he filed his patent application with the United States Patent and Trademark Office." Gasser, 353 F. Supp. 2d at 347. Mr. Infanti therefore had no interest in the Patent at the time he guaranteed the Notes.[7]

Vicky did not transfer a security interest in the Patent to Scharpf because there is no enforceable security agreement between them. Vicky did not sign the PTO Security Agreement. This renders the agreement unenforceable as against Vicky. It is well-established that in "order to be enforceable[,] the security agreement must be signed by the debtor." In re Maple Contractors, Inc., 172 N.J. Super. 348, 353, 411 A.2d 1186, 1189 (Super. Ct. Law Div. 1979); see also 12A N.J. Stat. Ann. § 9-203(b)(3)(A) (in order for a security agreement to be enforceable, the debtor must authenticate it and provide a

---

[6]Infanti International, then represented by counsel, submitted a brief in which it reargued its position which the Court previously rejected, namely, that Mr. Infanti was under an obligation to assign the Patent to the Corporation because, while he was an employee, he "created the Patent for International's sole benefit and use." (Infanti International Mem. at 2). Gasser, 353 F. Supp. 2d at 353 ("the documentary and credible testimonial evidence drive the Court to conclude that it was his daughter and not Mr. Infanti who was President of Infanti International when he created his invention or had the Patent for it recorded, and he had no duty, fiduciary or otherwise, to assign his interest in the Patent to the corporation"). Moreover, Infanti International's assertion that it is the rightful owner of the Patent under the work-for-hire doctrine was also rejected as being incompatible with the evidence which the Corporation presented on its partial motion for summary judgment. See Gasser, 353 F. Supp. 2d at 353 ("Defendants have not argued or presented any evidence that Mr. Infanti was an 'employee' between the time Infanti International was founded and when the Patent was recorded with the United States Patent and Trademark Office.").

[7]This is so even though the Court held that Mr. Infanti's transfer of the Patent to his daughter was fraudulent, and therefore the assignment was "void." Gasser, 353 F. Supp. 2d at 356 n. 15 (citing and quoting In re Faraldi, 286 B.R. 498, 503 (Bankr. E.D.N.Y. 2002)). A void contract is an agreement with no legal effect. Restatement (Second) of Contract, § 7, cmt. a.

description of the collateral).

Accordingly, since no one with legal interest in the Patent ever granted Scharpf a security interest in it, he never obtained one. Plaintiffs are thus the only parties with a valid interest in the Patent as creditors of Mr. Infanti. The fact that the PTO Security Agreement was filed with the United States Patent and Trademark Office is of no consequence. See 37 C.F.R. § 3.54 ("The recording of a document ... is not a determination by the Office of the validity of the document or the effect that document has on the title to a ... patent").

Accordingly, the Court finds that Scharpf never received a security interest in the Patent from anyone.

Even assuming that Scharpf had a security interest in the Patent, he failed to perfect it. Scharpf was required to perfect his security interest in the Patent pursuant to Article 9 of the New Jersey Uniform Commercial Code.[8] See, e.g., Lloyds Credit Corp. v. McLain Heller Ins. Co., 262 N.J. Super. 211, 214, 620 A.D.2d 472, 473 (Super. Ct. Law

---

[8]Since the revised Article 9 of the UCC was enacted in 2001, courts have held that Section 261 of the Patent Act does not displace the Uniform Commercial Code in providing a mechanism for perfecting security interests in patents. See Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039, 1045-49 (9th Cir. 2001) (holding that a security interest in a patent should be perfected in accordance with state law, not by filing record in Patent and Trademark Office, because the Patent Act addresses filings only with respect to transfers in ownership but not with regard to security interests), cert. denied, 534 U.S. 1130 (2002); In re Tower Tech, Inc., 67 Fed. Appx. 521, 524 (10th Cir. 2003) (same) (citing Moldo) (unpublished opinion); see generally 35 U.S.C. § 261 ("An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage"). Prior to the revisions to Article 9, courts were divided on this issue. Compare In re Transportation Design and Technology, Inc., 48 B.R. 635, 639 (Bankr. S.D. Cal. 1985) and Holt v. United States, 13 U.C.C. Rep. Serv. 336, 337 (D.D.C. 1973) (holding that 35 U.S.C. § 261 is inapplicable to the perfection of security interests) with In re Peregrine Entertainment, Ltd., 116 B.R. 194, 203-04 (Bankr. C.D. Cal. 1990) (rejecting Transportation Design and concluding that federal filing requirements for copyrights is an adequate filing system that entirely pre-empts UCC filing).

7

Div. 1992) ("The Uniform Commercial Code, as adopted in New Jersey, provides that a security interest in general intangibles may only be perfected by filing"); N.J. Stat. Ann. 12A § 9-301 (comment) ("the law governing perfection of security interests in both tangible and intangible collateral . . . is the law of the jurisdiction of the debtor's location, as determined under section 9-307"). Under the UCC, Scharpf was obligated to perfect his security interest in the Patent by filing a UCC-1 financing statement in the office of the New Jersey Secretary of State, Division of Commercial Recording, because Mr. Infanti resides in New Jersey. See N.J. Stat. Ann. 12A § 9-307(b)(1) ("Except as otherwise provided in this section, the following rules determine a debtor's location.... A debtor who is an individual is located at the individual's principal residence."); N.J. Stat. Ann. 12A § 9-310(a) (generally, "a financing statement must be filed to perfect all security interests"); N.J. Stat. Ann. 12A § 9-501(a)(2) (the office in which to file a financing statement to perfect a security interest is "the Division of Commercial Recording"); In re Wholesale Warehouse, Inc., 141 B.R. 59, 63 (Bankr. D. N.J. 1992) ("A security interest in general intangibles is perfected by filing a financing statement with the Secretary of State"). His failure to do so means that he never perfected his security interest in the Patent to the extent that he ever had one.[9]

## B. The Disposition of the Patent

Plaintiffs ask that the Court sell the Patent on their behalf to satisfy some or all of the Judgment. Fed. R. Civ. P. 69(a) provides that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court orders otherwise."

---

[9]Because both Infanti International and Vicky Infanti reside in New York, Scharpf was obligated to file a UCC-1 financing statement with the New York Department of State to perfect his interest in the Patent against them. Scharpf has presented no evidence that he did so.

8

N.Y. C.P.L.R. § 5225(a) states, in relevant part, "[u]pon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of ... personal property in which he has an interest, the court shall order that the judgment debtor ... deliver any ... personal property ... to a designated sheriff." Courts have sanctioned the use of N.Y. C.P.L.R. §5225 for a judgment debtor's "intangible" property interest. See, e.g., Udel v. Udel, 82 Misc.2d 882, 884, 370 N.Y.S. 2d 426, 428 (Civ. Ct. New York Co. 1975) (even where Business Corporation Law restricts transfer of stock in a professional corporation, it does not preclude the court from directing a turnover of stock to satisfy a judgment under the predecessor to N.Y. C.P.L.R. § 5225). Here, the prerequisites for the grant of a turn-over order have been satisfied because: (a) the Court previously held that Mr. Infanti owns the Patent based on the finding that the conveyance of his interest in it to his daughter, Vicky, was fraudulent, see Gasser, 353 F. Supp. 2d at 355 ;[10] (b) the Judgment has not been satisfied; (c) Mr. Infanti has no money to satisfy the Judgment; and (d) adequate notice was given to Mr. Infanti regarding this application.[11]

Typically, after the judgment debtor turns over property to the sheriff pursuant to court order issued under N.Y. C.P.L.R. § 5225, the sale of that property proceeds

---

[10]Cf. 11 Weinstein, Korn & Miller, New York Civil Practice, ¶ 5225.09, at 52-379 (2004) ("It is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient").

[11]The fact that the order to show cause permitted plaintiffs to serve it and the pleadings supporting it by regular mail and not certified or registered mail, return receipt requested (as required in the rule), is no bar to the grant of the relief because Mr. Infanti is a named defendant in the case, who along with his then lawyer, was served with a copy of the order to show cause and the underlying papers. Cf. Bergdorf Goodman, Inc. v. Marine Midland Bank, 97 Misc.2d 311, 312-13, 411 N.Y.S.2d 490, 491 (Civ. Ct. New York Co. 1978) (notice of proceeding under N.Y. C.P.L.R. § 5225 served by regular mail, and thus court dismissed petition since due process requires a manner of service "reasonably calculated to give the judgment debtor notice of the proceeding and an opportunity to intervene").

according to the requirements of N.Y. C.P.L.R. § 5233 (requiring public notice of sale at auction). However, in this case, because of the lack of marketability of the Patent and the difficulty in determining its true value, the Court finds that it is unlikely that a turn over of the Patent to the sheriff would result in satisfaction of some or all of the Judgment. Udel, 82 Misc.2d at 884, 370 N.Y.S.2d at 426. As one leading commentator states, pursuant to N.Y. C.P.L.R. § 5228, the Court should, in its discretion, "appoint a receiver when disposition of the debtor's property by private negotiation is preferable to an execution sale."[12] 11 Weinstein, Korn & Miller, New York Civil Practice, ¶ 5228.05, at 52-499 (2004). A receivership has been held especially appropriate when the "property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction, for example, the interest of a psychiatrist/judgment debtor in a professional corporation of which he is a member." David Siegel, New York Practice, § 512 (2004) (citing Udel, supra). The Court therefore orders the appointment of a receiver under N.Y. C.P.L.R. § 5228 for the purpose of selling the Patent and distributing the proceeds of the sale to plaintiffs to satisfy all or part of the Judgment. Further, pursuant to N.Y. C.P.L.R. § 5234(c),[13] the Court holds, to the extent applicable, that Plaintiffs' priority interest in the Patent will not expire within sixty days after an appropriate order is entered by the Clerk of Court.

---

[12]N.Y. C.P.L.R. § 5228(a) provides in relevant part that upon "motion of a judgment creditor ... the court may appoint a receiver who may be authorized to ... sell any real or personal property in which the judgment debtor has an interest or to do any other acts designated to satisfy the judgment." The Court shall specify the contours of the receiver's obligations and rights in its order. Id.

[13]"Where delivery ... to the ... receiver ... is not completed within sixty days after an order is filed, the judgment creditor who secured the order is divested of priority, unless otherwise specified in the order." N.Y. C.P.L.R. § 5234(c) (emphasis added).

10

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for appointment of a receiver is granted. Within five business days following entry of this Memorandum and Order, plaintiffs' counsel shall provide the Court with the names, addresses and telephone numbers of three individuals who could serve as receivers for the purpose of selling the Patent, along with a proposed order for the appointment of the Receiver.

SO ORDERED.

Dated:     February 8, 2006
          Brooklyn, New York

I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:

Alex Spizz
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Avenue
New York, New York 10022
Attorneys for Plaintiffs

11

Helen A. Nau
Pitney Hardin LLP
P.O. Box 1945
Morristown, New Jersey 07962-1945
Attorneys for defendant Amboy National Bank

Stan L. Goldberg
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Attorneys for Receiver, Sanders W. Gropper

George E. Scharpf
c/o Amboy National Bank
3590 U.S. Highway 9
Old Bridge, New Jersey 08857
*Pro Se*